CALOGERO, Justice.
Defendant was charged with the knowing and intentional distribution, on October 24, 1973, of a controlled dangerous substance, namely, phenmetrazine, a drug the bill of information suggests is commonly known as Preludin, in violation of La.R.S. 40:968(A). The recipient was one A1 Burns, a Baton Rouge City Police Officer. Defendant was tried and found guilty as charged by a twelve member jury. He was sentenced to serve three years at hard labor.
On October 12, 1973, twelve days prior to the incident giving rise to the charge, Officer Albert Burns went to the residence of Wilbert Marcel for the purpose of pur *225 chasing a controlled dangerous substance. He informed Marcel that he wanted some Preludin. Marcel then asked defendant, who was present, to get a container of pills. Officer Burns testified that defendant handed him the pills, but defendant contended that he handed the pills to his uncle, who had been ill. Officer Burns said he then gave some money to Marcel; defendant testified that he did not see an exchange of money.
On October 24, 1973, Officer Burns returned to the residence of Wilbert Marcel. Officer Burns testified that he went to purchase drugs from anyone present on the premises; that only defendant Charles E. Lewis was there; and that Lewis was carrying a shotgun and pointing it at Officer Burns. Burns testified that he asked for five Preludin pills, that Lewis gave them to him, and that he gave Lewis twenty dollars. Burns then went back to his car where Earl Wright, an investigator with the District Attorney’s office was waiting and Burns showed Wright the pills. This was confirmed by Wright.
Defendant took the stand in his own defense and testified that on October 24, 1973, when Officer Burns returned to the apartment of his uncle, Wilbert Marcel, Officer Burns asked where his uncle was, and when told he was not in, left without asking for or being given any pills. He stated that he was holding a carbine rifle, in contrast to a shotgun, when Officer Burns came to the door, but that he did not point it at Burns and that he put it on the dresser while he was talking to Burns.
Defense counsel perfected five assignments of error but briefs and argues only three before this Court.
ASSIGNMENT OF ERROR NO. 1.
By assignment of error number one, defendant argues that it was error for the trial court to allow evidence to go to the jury concerning the distribution of “prelu-din” since “preludin” is not a controlled dangerous substance classified as such by La.R.S. 40:964. The bill of information charging defendant stated that “he knowingly and intentionally distributed a controlled dangerous substance, to wit: Phen-metrazine (commonly known as Preludin) to one A1 Burns, a Baton Rouge Police Officer” (emphasis added).
La.R.S. 40:968(A) provides as follows:
“§ 968. Prohibited acts — Schedule III; penalties
A. Manufacture'; distribution. Except as authorized by this part, it shall be unlawful for any person knowingly or intentionally:
(1) To produce, manufacture, distribute or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance classified in Schedule III;

La.R.S. 40:964 provides in pertinent part as follows:
“SCHEDULE III
A. Stimulants. Unless specifically excepted or unless listed in another Schedule, any material, compound, mixture, or preparation which contains any quantity of the following substances having a stimulant effect on the central nervous system:
(1) Phenmetrazine and its salts

At trial, Ms. Marta Finolit, a chemist with the Louisiana Police Crime Laboratory, was qualified as an expert and testified that the pills allegedly taken from defendant by Officer Burns were phenmetrazine. She further testified that phenmetrazine is the chemical name for Preludin, or conversely, that Preludin is a trade name and phenmetrazine is a chemical name for the same thing.
*226 From the outset of trial, defense counsel objected to the admissibility of any evidence having to do with the identification of Preludin on the grounds that the statute does not proscribe the distribution of such a drug. He argues that a statute must give a person of ordinary intelligence fair notice of what conduct is criminal, and points out in conjunction with this argument that guilty knowledge on the part of the accused is an essential element in controlled dangerous substances cases. The thrust of this contention is that the statute is vague and indefinite.
It is true as pointed out by counsel that both defendant and Officer Burns referred to Preludin in their testimony, and in response to questions, asserted or admitted that they were not familiar with the term phenmetrazine. However, it was shown as an evidentiary matter that Preludin is a trade name and a common name for a pill or capsule which is a form of phenmetra-zine.
The question thus presented is whether a statute is vague and indefinite which identifies a controlled dangerous substance by its chemical name alone, and without reference to its trade, brand or “street” name or names as well.
We conclude that the statute is not vague and indefinite, as a constitutional proposition, or otherwise. If anything, it is overly precise and specific.
Defendant’s actual complaint is more properly the subject of the defense that he did not knowingly and intentionally distribute a controlled dangerous substance, a defense which was duly presented to, but not accepted by the trial jury, and which is presented to this Court in connection with a motion for directed verdict by Assignment of Error number four.
ASSIGNMENT OF ERROR NO. 4.
By this assignment, defendant argues that the trial court erred in denying his motion for directed verdict since there was no evidence to establish defendant’s knowing and intentional distribution of a controlled dangerous substance. Defendant’s argument is that “guilty knowledge” is an essential element of the crime of distributing a controlled dangerous substance, that the state failed to present any evidence tending to prove that defendant knew he was distributing a controlled dangerous substance and that, therefore, the trial court should have directed a verdict for defendant.
The law of this state is clear that “insufficiency of the evidence is not a question of law and may not be reviewed by this Court” and that a denial of a motion for directed verdict will be reversed only when there is a total lack of evidence to prove the crime itself or an essential element of the crime. State v. Douglas, 278 So.2d 485 (La.1973).
In order to prove a violation of La.R.S. 40:968 (A) it must be shown that defendant knowingly or intentionally distributed a controlled dangerous substance classified in Schedule III.
There is, of course, evidence that defendant knew it was a controlled dangerous substance, for Officer Burns testified that defendant charged him $4.00 per pill for five pills in a transaction which took place with defendant holding a shotgun on him.
The assignment is without merit.
ASSIGNMENT OF ERROR NO. 5.
In support of this assignment, defendant argues that the trial court erred in permitting the assistant district attorney to read to the jury portions of the criminal code applicable to the law of principal in connection with a prior incident for which defendant was neither charged nor being tried. Defense counsel contends that this unduly prejudiced defendant in the eyes of *227 the jury, and gave them a means of convicting defendant on the basis of his “relationship” with an accused in other case. Perhaps more pertinently he is contending that the court’s allowing the district attorney to read the law of conspiracy in connection with the prior incident inferentially suggested to the jury that they could find defendant guilty if satisfied that defendant was a principal in the prior incident even if they did not believe that he committed the charged offense of October 24.
To better comprehend the substance of this argument and the reasons for our resolution hereinafter it is necessary that a series of events which took place at the trial be related.
In the taking of evidence there was testimony concerning a prior incident in which the same officer went to the same apartment and purchased Preludin from Wilbert Marcel while defendant was present. Testimony relative to this October 12, 1973 incident was initiated by defense counsel on cross-examination of Officer Burns. Defense counsel also introduced into the trial the fact that Marcel had been arrested and was coming up for trial and that defendant had been asked to testify against him.
In the opening half of the state’s closing argument the assistant district attorney referred to the incident of the 12th of October apparently hoping that this incident where defendant handed five pills to Officer Burns, or as defendant contended, to his uncle Wilbert Marcel, for, or in the presence of Officer Burns, tended to show that on October 24 defendant knew what he was doing when he sold Burns five pills of Preludin.
In closing argument defense counsel made the following basic argument:
Officer Burns went out on October 12 to make a “buy” from Marcel. He paid the money to Marcel but to his surprise received the pills from Lewis. Therefore he had not made a “good buy,” i. e., one which would support a prosecution. Realizing this, he went out a second time, discovered Marcel absent, received nothing from Lewis. Inasmuch as he had the five pills from the first “buy” he located Lewis, asked him to help the state prosecute Marcel. Lewis refused, so Burns made up the October 24 story of a “buy” and charged Lewis.
In rebuttal, the assistant district attorney countered part of the defense argument, about the officer’s bad case of October 12, by reading La.R.S. 14:24, Principals.[1]
It was over defendant’s objection that the district attorney was permitted to read R.S. 14:24. Counsel contends that any definition of principals could only be for the purpose of showing culpability in connection with that incident.
On the contrary, the purpose of reading R.S. 14:24 was to expand upon and counter an argument presented by defense counsel. In effect it was defense counsel who raised for jury consideration the quality of the state’s case or cases relative to the October 12 incident.
It was therefore appropriate and for this reason not error, for the court to permit the district attorney to read the article on principals. Furthermore, while allowing the district attorney to read R.S. 14:24, the trial judge, in a situation, incidentally, in which the other crime or other incident was brought into the trial by defendant, admonished the jury that defendant was on trial only for the October 24 incident and that they could “return a verdict only in regard to that offense and no other offense.”
*228 The district attorney in his concluding remark in rebuttal, highlighted the incidents of both October 12 and October 24, but reminded the jury that defendant was on trial for only the latter incident. Two reasons dictate our conclusion that reversible error did not here occur. For one thing, the comment added no element in the trial which had not earlier been introduced. Equally important no objection, request for mistrial, or request for admonition was made by counsel for defendant with respect to this concluding remark of the district attorney.
There is no merit to this assignment.
For the foregoing reasons, the conviction and sentence of defendant Charles E. Lewis, is affirmed.
DIXON, J., concurs.

. La.R.S. 14:24 provides:
“All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.”